UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 03-62019-CIV-COHN/SNOW



PETMED EXPRESS, INC.
    Plaintiffs,

vs.

MEDPETS.COM, INC.
and SATWANT SINGH,

    Defendants,

_____/

### MOTION TO SET ASIDE ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANTS UNDER FED.R.CIV.P. 55(c) and 60(b)

Pursuant to Rule 55(c) and Rule 60(b)(1), (4) and (6) of the Federal Rules of Civil Procedure, Defendants, Medpets.com, Inc. (MedPets) and Satwant Singh (Singh), individually, move this Court to set aside the final default judgment issued against Defendants on June 28, 2004 for the reasons set forth in the Memorandum below.

### MEMORANDUM

### INTRODUCTION

On January 28, 2003, Plaintiff, PetMed Express, Inc. (PetMed Express) notified Defendant, MedPets, that it believed that MedPet's use of the domain names www.1888MedPets.com and www.MedPets.com for the online sale of pet medicine infringed PetMed Express' trademarks in PetMed Express and 1888PetMeds. The Treasurer and Shareholder of MedPets, Satpal Rana, responded to the letter

on February 6, 2003 and an attorney on behalf of MedPets
responded to a letter from PetMed Express' counsel on
February 25, 2003. (Plaintiff's Motion for Final Default
Judgment, Composite Exhibit 1).

The 1888MedPets.com Web site was shut down between April
and June 2003, several months before the Complaint was filed.
(Rana Affidavit ¶9).  After the Complaint was filed, on
January 22, 2004, the MedPets.com Web site was shut down and
neither site has been operating since.  (Rana Affidavit ¶11).
There was no further communication between the parties after
February 25th, 2003.

On November 10, 2003, Plaintiff filed a Complaint for
Trademark Infringement, Unfair Competition, Federal Trademark
Dilution, Federal Cyberpiracy, Florida Common Law Trademark
Infringement and Florida Common Law Unfair Competition
against Defendant MedPets and, individually, against its
President, Satwant Singh.  The record indicates that Singh
was served at his home both individually and on behalf of the
corporation at 8:45 p.m. on November 25, 2003.  However, the
evidence indicates that Mr. Singh could not have been home at
8:45 p.m. that night, that Mr. Rana was the one who received
service and that Singh was not aware that he had been sued
personally.  (Singh Affidavit ¶3)  There was no response to
the Complaint by Defendants because of their mistaken belief
that shutting down operation of the Web sites constituted an
adequate response.  A Default Judgment was entered against

both Defendants assessing damages of $916,553.10.  Mr. Singh became the judgment debtor of almost a million dollars without knowing he had been sued and without ever having his case heard.  It would be unfair and unjust to allow this judgment to stand.

### FACTS

Mr. Singh came to this country from India in 1991.  He works 50 — 60 hours a week as a Product Planning Manager for the Lattice Semiconductor Corporation based in Hillsborough, Oregon.  He is the sole support of a large extended family. His first language was not English.  MedPets.com began operation in late 2001 as a way to assist Mr. Singh's brother who had been recently laid off, Mr. Satpal Rana, and Mr. Ravi Mann in starting a new business.  Mr. Rana arrived in this country from India in 1999.  English is his second language. Singh became involved as a shareholder when he allowed his brother to operate the business in his house in exchange for a share of any profits.  However, he was never involved in any way in the day to day running of the business.  (Singh Affidavit ¶5).  He was never personally served in this case. Although he was aware of the cease and desist letters, he was unaware of the Complaint or any subsequent Motions that included him personally.[1]  Mr. Rana apparently signed the service of process for both the company and Singh.  (Rana

---

[1] Technically, because Mr. Singh was the registered agent, the corporation also was never served. *See Woodbury v. Sears, Roebuck & Co.*, 152 F.R.D. 229 (M.D. Fla. 1993).

Affidavit ¶10).   Singh knew nothing about the lawsuit
affecting him personally until the judgment was entered
against him on June 28, 2004 and he received notice of it on
or about July 11, 2004.   He immediately sought counsel and
filed this Motion.

Mr. Rana informed him, and Mr. Singh believed, that the
company's legal problems were solved when the Web sites were
taken down and the business was no longer operating.   (Singh
Affidavit ¶6)   Rana and Singh mistakenly believed that no
further action on their part was necessary.   Being totally
unfamiliar with the requirements of the U.S. judicial system,
they mistakenly believed that if the company complied with
PetMed Express' demand in its letters to stop operating, that
that would solve the legal problem.   Clearly, they were
wrong.

### LEGAL ARGUMENT

The Court may, in its discretion, set aside a final
default judgment for mistake, inadvertence, surprise or
excusable neglect, pursuant Fed.R.Civ.P. 60(b)(1), or for
"any other reason justifying relief from the operation of the
judgment" under Fed.R.Civ.P. 60(b)(6).   All doubt as to
whether to set aside the judgment should be resolved in favor
of the moving party to the end of securing a trial on the
merits. *A.C. Samford, Inc. v. U.S.*, 226 F.Supp. 72,76(M.D.
GA 1963) (citing Moore's Federal Practice, Vol. 6, 55.10(1));
*Davis v. Parkhill-Goodloe Co.*, 302 F.2d 489,495 (5th Cir.
1962); *General Tel. Corp. v. General Tel. Answering Service*,

4

277 F. 2d 919, 921 (5th Cir. 1960). In addition, Rule 60(b) should be construed liberally for the purpose of doing substantial justice when reviewing default judgments. *U.S. v. Gould*, 301 F.2d 353, 1962 U.S. App. Lexis 5421 (5th Cir. 1962); *Greater Baton Rouge Golf Association v. Recreation and Park Commission*, 507 F.2d 227 (5th Cir. 1975). *Solaroll Shade and Shutter Corp., Inc. v. Bio-Energy Systems, Inc.*, 803 F.2d 1130;1986,U.S.App. Lexis 33395 (S.D. Fla. 1986). In addition to mistake or excusable neglect, MedPets must demonstrate meritorious defenses and lack of prejudice to PetMed Express. *Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc. et al.*, 740 F.2d 1499, 1511 (11th Cir. 1984); *Obi Okehi et al v. Security Bank of Bibb County*, 199 F.R.D. 388, 394 (MD Ga. 2001).

### I. Defendants MedPets and Singh's failure to respond constitutes excusable neglect because of their mistaken belief that complying with the demand to stop using the marks was all that was required.

MedPets and Singh's failure to respond to the complaint filed against them may have been foolish and negligent, but it was not done with the intent to avoid, delay or in any way act in bad faith. In fact, the opposite is the case. In doing exactly what was asked of them by PetMed Express in the cease and desist letters, they sincerely believed they could end the litigation. They clearly did not have legal advice. They were wrong. However, their neglect should be considered excusable since their actions were a clear, if bungling, attempt to comply with PetMeds Express' demands and obey the

law. *See Roberts v. Rehoboth Pharmacy, Inc. et al.*, 574 F.2d 846 (5th Cir. 1978).

## II. Defendants have meritorious defenses to the infringement action.

To obtain relief under Rule 60(b), MedPets must demonstrate it has defenses that would alter the outcome of the lawsuit and the result would be different than if the default is allowed to stand. *Jackson v. Seaboard Coastline Railroad*, 678 F.2d 992 (11th Cir. 1982) *Seven Elves, Inc. v. Eskarazi*, 635 F.2d 396, 403 (5th Cir. 1981). A clear recitation of the facts is sufficient to show a meritorious defense. *Roberts*, 574 at 848, n.1. Both the corporate defendant, MedPets.com, Inc. and Mr. Singh personally have several meritorious defenses to claims of trademark infringement, cyber-piracy and the related pendent claims which would change the result of the lawsuit:

A) <u>Laches</u>: Plaintiff knew or should have known of Defendant MedPets' Web site in September of 2001, yet waited over two years to file a Complaint. MedPets has a defense of laches. To prevail on a laches defense, Defendant must show unreasonable delay and reliance to its detriment *Conagra, Inc. v. Singelton*, 743 F.2d 1508 (11th Cir. 1984), *General Conf. Corp. of Seventh Day Adventists v. Perez*, 97 F.Supp 2d 1154, 200 U.S. Dist. Lexis 6136 (S.D. Fla. 2000). Two years may seem like a short delay in traditional trademark cases, but on Internet standard time, two years can be a business lifetime. For protecting PetMed Express' trademark rights on

the Internet, waiting two years is unreasonable delay.
MedPets and Singh, operating for two years without any
complaint from PetMed Express, clearly had no reason to
conclude that there was a problem with their domain name.

    B)   <u>Lack of bad faith</u>

Bad faith registration of a domain name is a critical
element in a case under the Lanham Act §1125(d)(B), also
known as the Anti Cyber-Piracy Act (ACPA). Neither Defendant
registered the domain names in bad faith under ACPA.

In evaluating the many factors to be considered in
determining whether MedPets acted in bad faith under the
ACPA, it is clear that none of these factors apply to
MedPets. The Plaintiff's complaint is based solely on the
contentions that because the names are similar, Defendants
have infringed their registered trademarks and violated the
ACPA by registering the domain names in bad faith. Under the
ACPA, Defendants have a strong defense that its registration
of the domain names was not in bad faith.

Some of the statutory factors for determining bad faith
under the ACPA include:

    1)   Whether the Defendants had used the domain
name in connection with the bona fide offering of any
services.

MedPets began operation in October of 2001. The intent
of registering the domain name MedPets.com and
1888MedPets.com was to conduct a bona fide business. Indeed,
it conducted business under those names for over two years.

(Rana Affidavit ¶2, 8, 11).  There were also plans to allow for phone ordering through the 888 number, but the company was unable to acquire the corresponding phone number.

2)   Whether the Defendant offered to sell the domain names.

MedPets never offered to sell the domain names to PetMed Express or anyone else.  The intent was always to run a legitimate business, which it did.

3)   Whether Defendants intended to divert consumers from a trademark owner's online location by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the site.

Defendants believed that their domain name and Web site was different enough from PetMed Express to avoid any confusion.  The name was not chosen to trade off PetMed Express' goodwill or to divert their customers to the MedPets Web site.  It was chosen because it was short and the domain name was available.  (Rana Affidavit ¶3).

4)   Whether Defendants provided false or misleading contact information when applying for the domain name.

All the contact information on both sites was accurate. (Rana Affidavit ¶8).

5)   Whether the Defendant acquired multiple identical or confusing domain names.

MedPets did not acquire multiple identical or confusing names to PetMed Express.  It did acquire several different

domain names when it was trying to sell pet medicines from different Web sites. None of them are confusing to PetMed Express. (Rana Affidavit ¶7).

### C) Defective Service

Mr. Singh was not properly served in this case. He did not have actual notice or constructive notice. The complaint was left with Mr. Rana and since Mr. Rana was not authorized to accept service of process on behalf of Mr. Singh, service was defective and therefore void under Fed.R.Civ.P. §60(b)(4). *See J.D. Pharmaceutical Distributors, Inc. v. Save-on Drugs & Cosmetics Corp., et al.*, 893 F. 2d 1201, 1205 (11th Cir. 1990) Mr. Rana was unaware that he was not authorized to accept service for Mr. Singh. *See Obi Okehi et al. v. Security Bank of Bibb County*, 199 F.R.D. 388 (M.D. Ga. 2001).

Further, Mr. Rana did not inform Mr. Singh that he had been served. Mr. Singh did not have even constructive receipt or notice. *See Lewis v. Conners Steel Co.*, 673 F.2d 1240, 1242 (11th Cir. 1982); *Franks v. Bowman Transportation Co.*, 495 F.2d 398, 405 (5th Cir.1974), rev'd on other grounds, 424 U.S.747, 96 S.Ct. 1251, 47 L.Ed. 2d 444 (1976). (Where "it is shown that the claimant through no fault of his own has failed to receive the suit letter ... the delivery of the letter to the mailing address cannot be considered to constitute statutory notification." 495 F.2d at 405;

constructive receipt was held not applicable when wife failed to deliver notice).

Insufficient service of process renders a judgment void as the Court lacks personal jurisdiction in such a situation and therefore has no power to render a judgment. *See, e.g., Varnes v. Local 91, Glass Bottle Blowers Ass'n,* 674 F.2d 1365, 1368 (11th Cir. 1982) (finding judgment void under Rule 60(b)(4) where Defendant not properly served).

In *Guess?, Inc v. Chang et al*, 163 F.R.D. 505, 508(N.D. Ill. 1995), the court found a default judgment entered against one of the defendants void under Rule 60(b)(4). The court accepted the argument that a default judgment entered against a party who has not been properly served, regardless of the party's actual knowledge of the lawsuit, is void and must be vacated upon a proper motion by the defendant. *Id.* at 507. See also, *Mid-Continent Wood Products, Inc. v. Harris*, 936 F.2d 297, 302 (7th Cir. 1991) ("actual knowledge of the existence of a lawsuit is insufficient to confer personal jurisdiction over a defendant in the absence of valid service of process"); *Bennett v. Circus U.S.A.*, 108 F.R.D. 142, 148 (N.D. Ind. 1985). n3; *Woodbury* at 152 F.R.D. 235 ( "…if the prescribed statutory method is not followed, the fact that the individual Defendant actually received notice does not necessarily make the service valid"); *Sta-Rite Indus. v. Stembridge (In re Stembridge)* 2002 Bankr. LEXIS 1150 (Bankr. M.D. Ga. 2002); *Lazaro v. USDA* 186 F. Supp. 2d 1203, 1217 (M.D. Fla. 2001)( Plaintiff has the

burden of demonstrating that service of process was proper). *See Binder v. Historic Restoration, Inc.*, 106 B.R. 313, 315 (N.D. Ga. 1989) ("Once service of process is challenged, the burden of proof is on the plaintiff to establish its validity.")(citations omitted)).

In addition, since default judgments are disfavored, especially where the money judgment is so high, there should be adjudication on the merits and "at least strict compliance with the legal prerequisites establishing the court's power to render the judgment." *Varnes*, 674 at 1369.

> D)    Lack of Likelihood of Confusion

Although PetMed Express and MedPet.com are arguably similar, there is no evidence that any confusion resulted from their respective Web sites operating concurrently for two and a half years. There is no evidence of misdirected or lost business. Although Plaintiff is not required to prove actual confusion, it is considered the best way to demonstrate likelihood of confusion. *World Carpets, Inc. v. Dick Littrell's New Word Carpets*, 438 F.2d 482,489, 1971 U.S.App. Lexis 11989 (5th Cir. 1971) (There can be no more positive or substantial proof of likelihood of confusion than proof of actual confusion); *Freedom Savings and Loan Association v. Way*, 752 F.2d 1176;1985 U.S. App. Lexis 28913 (11th Cir. 1985).

In addition, courts do not attach much weight in testing for confusing similarity where the similarity involves an extremely common prefix or suffix like "Pet" or "Med" which

is certainly very common in the pet supplies field.  *First National Bank of Omaha v. Mastercard International, Inc.*, 2004 U.S. Dist. Lexis 13162 (S.D.N.Y. 2004) ("Onesmart" and "Smartone" not confusingly similar for smart credit cards.); *Affiliated Hospital Prod., Inc. v. Merdel Game Mfg. Co.*, 513 F 2d 1183, 185 U.S.P.Q. 321 (2nd Cir. 1975).  (Kick'er and Kik-it not confusingly similar for table top soccer games); *Kramer Trenton Co. v. Walcutt*, 408 F 2d 479, 161 U.S.P.Q. 228 (C.C.P.A. 1969) ("Winterizer" and "Winterstat" not confusingly similar for refrigeration systems).

Both the words "Pet" and "Med" are commonly used in the pet supply and in the veterinary supply market.  It is also likely that both words are used by millions of Web sites as key words and meta tags in search engines.  MedPets could make a strong defense on all the factors for likelihood of confusion that the reason there was no actual confusion cited by PetMed Express in its Complaint is that very little confusion was likely.

   E)   Inaccuracies and Misrepresentations by Plaintiff

Much is made in PetMed Express' complaint about the fact that 1888MedPets was a "talk" line that did not connect to MedPet.com.  Indeed, it is the linchpin of PetMed Express' argument that Defendants acted in bad faith, and upon which Plaintiff and the Court heavily relied in assessing damages. While it is true that 1888MedPets corresponded to the number 1-888-633-7387, that number did not belong to Defendants. (Rana Affidavit ¶5).  It would have been easy enough to

determine the ownership of the number.[2]  Yet, not only did Plaintiff not verify whether Defendants owned and used the number, it used it as the basis for the totally incorrect assertion that MedPet acted in bad faith.  The Defendants registered the domain name hoping they would be able to acquire the number that corresponded to it at some point. They did not own the number and were never able to acquire it.  It is one reason the 1888MedPets.com Web site was disabled so quickly.  It does not constitute evidence of bad faith, just bad luck.

PetMed Express alleges in its Complaint that Defendants registered www.1888MedPets.com after 1888PetMeds had become distinctive and famous.  (Complaint at ¶44.)  PetMed Express' first use of 1888PetMed was less than five months before MedPets registered 1888PetMed.com.  There is no mark that can become famous or distinctive in that short a period.  Under the Lanham Act, the distinctiveness analysis requires the length and manner of use, the nature and extent of advertising promotion and sales and the connection in the public's mind between the mark and the product.  PetMed Express submitted no evidence of how long 1888PetMed had been in existence, and no evidence of a strong connection in the public's mind with respect to this mark.  It relied exclusively on the use of the mark "PetMed Express".  The use of the mark PetMed Express does not make 1888PetMed

---

[2] Simply dialing 1-888-633-7387 connects to a "talk line" which refers the caller to 800-779-TALK, an adult talk line apparently owned by "Intimate Encounters", with which Defendants are in no way affiliated.

distinctive for purposes of the ACPA. *American Television and Communications Corp. v American Communications and Television*, 810 F.2d 1546,1987 U.S. App. Lexis 1675 (11th Cir. 1987). Further, 1888PetMed's use for less than five months under the facts of record also does not make it a distinctive mark for the purposes of the ACPA.

Plaintiff knew that the Defendants' Web sites had been shut down well before they filed their Motion for Final Default Judgment. Both the Complaint and the Motion incorrectly state that both sites were engaged in commercial activity at the time the Complaint was filed (Complaint 17, 21, 22; Motion at p.2; Roadruck Declaration ¶9.) Only MedPets.com was still operating when the Complaint was filed and it was disabled soon after.

## III. There is no prejudice to Plaintiff from the setting aside of the Judgment.

The only possible prejudice to PetMed Express is the necessity to litigate this case on its merits. Delay in realizing satisfaction on a claim is never sufficient to establish the degree of prejudice which would preclude setting aside the judgment under Rule 60(b). *Flicken v. Henry Gody International, Inc.*, 1991 U.S. Dist. Lexis 9109 (D. Kan. 1991)

The MedPet's offending Web sites have been shut down. The MedPet.com California corporation has been dissolved. These actions were taken well before PetMed Express filed its Motion for Final Default Judgment. There is no further or

continuing damage that can be claimed by PetMed Express. Setting aside an unfair default judgment award of extremely high damages cannot cause any prejudice to PetMed Express other than awarding them damages they could never have received had the case been litigated on its merits.

IV. <u>The Default Judgment against Singh individually should be set aside because he was never served, he was not aware of the Complaint against him personally and he was not a moving, active, conscious force behind the infringement.</u>

In order to be held personally liable for trademark infringement, a corporate officer must direct, control, ratify, participate in or be the moving force behind the infringing activity. *Babbitt Electronics, Inc. v. Dynascan Corp.*, 38 F. 3d 1161, 1994 U.S. App. Lexis 33188 (11th Cir. 1994). At a minimum, this judgment should be set aside as against Singh personally.

Mr. Singh works 50-60 hours a week at a very demanding job. Although he helped his brother by providing him a place to work, he had no involvement of any kind in the daily operation of MedPets.com or 1888MedPets.com. He did not direct any infringing activity or participate in it. (Singh Affidavit ¶5). (Rana Affidavit ¶2.) No evidence connects him to any sales or promotion of the Web site. Mr. Singh's only participation was to agree to be the president of the corporation and to provide office space. His participation in the formation of the corporation is not enough to hold him personally liable. "The liability standard does not ask whether the individual participated or engaged in some

infringing act; instead it asks whether he actively participated as a moving force in the decision to engage in the infringing acts, or otherwise caused the infringement to occur". *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F. 2d 1472, 1478 1991 U.S. App. Lexis 10447 (11th Cir. 1991). Mr. Singh clearly did not.

In addition, since he was never actually served, his duty to respond to the lawsuit was never triggered and the judgment as against him individually should be void under Rule 60(b)(4). *Goldstein v. Gordon*, 2002 U.S. Dist. Lexis 3348 (N.D. Tex. 2002).

## V.  The default judgment award is so greatly out of proportion to any actual damages suffered by PetMed Express that it would be unjust and unfair not to set it aside.

MedPets lost $3,967.00 over the two-and-one-half year life of the business.  Singh personally lost $779.00. Neither profited from its use of MedPets.com or 1888MedPets.com.  Even if Plaintiffs could prove that they were entitled to every nickel of profit awardable under the Lanham Act, which is highly unlikely based only on the facts of record, their damages would amount to zero, one million times less than was awarded to them by default.  The hardship this would create on Mr. Singh and his family is unexpected at least and extreme at best.  By any measure, this is unfair.  Rule 60(b)(6) has often been described as "a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses" *Griffin v. Swim-Tech Corp.*, 722 F.2d. 677, 1984 U.S. App.

16

Lexis 26626 (11th Cir. 1984).   Further, matters "involving large sums should not be determined by default judgment if it can reasonably be avoided… any doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits. *Samford*, 226 F. Supp. At 76 (quoting *Tozer, et al. v. Charles A. Krause Milling Co.*, 189 F.2d 242 (1951)).  *See also Seven Elves*, 635 F.2d at 403 ("the amount of money involved is very great, itself militating in favor of a full trial on the merits".)  We urge the Court to do justice in this case by setting aside the default judgment and permitting Defendants to file an answer and defend the action.

Respectfully submitted,


By _____
JEAN S. PERWIN
Florida Bar Number 321761
Law Offices of Jean S. Perwin
Suite 1144-Ingraham Building
25 Southeast Second Avenue
Miami, Florida 33131
Telephone: (305) 372-1630
Fax:  (305) 381-9834
Email:jperwin2@bellsouth.net


By _____
GAIL FIX
Florida Bar Number 0739529
Gardiner & Fix, LLC
Suite 1144-Ingraham Building
25 Southeast Second Avenue
Miami, Florida 33131
Telephone: (305) 372-1630
Fax:  (305) 381-9834
Email: gailfixlaw@aol.com


Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. First Class Mail, Postage Prepaid, this **2nd day of August, 2004** to the following attorneys: Peter W. Homer, Esq., Kevin P. Jacobs, Esq., and Francisco O. Sanchez, Homer & Bonner, P.A., 3400 Bank of America Tower, 100 S.E. Second Street, Miami, FL 33131.

_____
Ana L. Casanova

18